Next case is number 08-3187, Blake Barlow against the Department of Veterans Affairs, Ms. DeAntonio. Good morning, my name is Cynthia DeAntonio and may it please the court. We are here today to address four issues. One, whether the finding of absence without leave was supported by the evidence against my client, Mr. Blake Barlow. Whether the agency adequately demonstrated his removal actually promoted the efficiency of his service. Whether under the circumstances the penalty of removal was disproportionate with the alleged conduct. And finally, whether my client's due process rights were violated when ex parte communications between Judge Maloof and the agency's attorney occurred outside my client's counsel. Mr. Barlow served 20 plus years with the Department of Veterans Affairs. He was the chief of prosthetics. As an amputee himself, he was very creative and very instrumental in prosthesis being prepared for people so that their life could be as normal as possible and so that they would be ambulatory. During these times, it was crucial to have Mr. Barlow with the Department of Veterans Affairs due to the soldiers returning from Iraq, the need for these prosthesis and the agency, quite frankly, terminated him and we would argue that that termination was not justified. Mr. Barlow had been successful back in 2005 on an appeal. When he returned in February 2007, the same deciding official, Kathleen Fogarty, placed him on immediate detail. It probably was about 90 days after his return. That detail consisted of him working in an office. It was isolated. He crunched numbers. He was not even able to do what he loved to do and that was creating these prosthesis for people who needed them most. After that, in June, they actually permanently... But you're not arguing that appointment to that particular detail was an inappropriate government action, right? That's not what you're appealing. No, that's not what I was appealing. I was only giving the court some background on how we got there. During this time in fiscal, he was accused of an AWOL, absence without leave. They stated that he did not call in. Based on the record and the testimony that happened throughout this matter, it really didn't make sense. My client had hundreds of hours of leave available. We've got a problem in that regard, as you may recognize, which is a level of deference shown to the fact finder. In this case, particularly, it's intertwined with credibility determinations. We're kind of hard-pressed at the appellate level to second-guess or revisit those. Would you not agree with that statement? I do agree with that, Your Honor. I'll proceed to my next issue, and that is whether the agency adequately demonstrated that the removal actually promoted the efficiency of service. First and foremost, as I stated, the detail to fiscal in stripping him of his responsibilities and duties up until his termination did not promote the efficiency of service. This man was very skilled. He was very beneficial to the Department of Veterans Affairs. And even if arguendo, the lower court found that that one instance of AWOL was enough to justify his removal. Well, you keep talking about this one instance of AWOL, but in fact there were three instances of him being AWOL. In fact, when they found him AWOL, they were going to give him the suspension from the last time he had been AWOL. And if I can put some clarification on that, Judge, the case back in 2005 was two charges. One was AWOL, and one was failing to subject himself to an arbitrary drug test. He prevailed on that, but the AWOL survived. So that was the first AWOL back in 2005. Then the AWOL that is the subject of this matter was the alleged failure to call in. And it was another AWOL at the same time, which kind of caused it to be convoluted, because they happened almost within a relatively short period of time where he had called in. There was an investigation ongoing. He had called in, and his supervisor stated, Mr. McDougal, that he would have approved it, but he was not there. He had called in to another official. So they granted half the day and found him AWOL for the second part of the day. So the court is correct. There were some other references to AWOL. Well, in the agency's own manual, which articulates the potential penalties, look, I'm incredibly sympathetic to your client, very sympathetic. Quite honestly, I can't imagine I would have reached this penalty on my own. I can't imagine. But again, under the Douglas factors, we give a lot of deference to the agency's decision. As long as they properly follow procedure and weighed all the factors, we give a lot of deference. And they articulate a bunch of the factors, including his long-time service, which was commendable. So they articulated it. Whether I would have weighed it differently isn't what I get to do here on appeal. I have to just make sure that they considered everything. And one of the agency's own manual says, three strikes you're out, three AWOL instances, and you can be removed. So when we're assessing the reasonableness of the penalty, given that the agency's own manual says this is a possible penalty for a third strike, and he was at his third strike, it becomes difficult for me, even though I disagree with it and I think in this case maybe it shouldn't have been done. It becomes very difficult for me, given the standard of deference, to actually make that happen. So you've got to give me a reason within the standard of review I have to do that. Well, Judge, my client was a Title 38 employee with the government. And his penalty should have been assessed under Title V by the Secretary of the Department of Affairs. That didn't occur. And we argue that that was a procedural error because in that setting, it is the Secretary that determines whether or not those three strikes you're out would have resulted in termination, not what happened here where they were going under Center of Memorandum 05.08, which specifically lays out exactly what you're saying. That was one of the issues we brought up as problematic, as the procedures were not laid out correctly. And based on that, it may not have resulted in a termination at all had they gone under the proper title. But the alternate title doesn't say anything contrary to the three strikes you're out rule. It just doesn't have that language in it, right? It actually says, Judge, that because he was a Title 38 employee, that he did not have to even call in. So if that was the case... But he would have already been informed not only that he had to call in because he had these two previous AWOLs, but exactly who he had to speak to and that no one else would be adequate. Right. And when Kathleen Fogerty ordered that he or mandated that he talk to Mr. McDougal whenever he needed to request time off, I would argue, Judge, that that did not supersede his characterization as a Title 38 employee. Yes, she did give that mandate, but that did not strip him of those protections of due process and how and the manner in which he was going to be disciplined, which would have been addressed under Title V. I'm not exactly clear about what the argument is. You're not questioning the authority of the agency to require certain procedures with respect to his notification of AWOL, right? Could you repeat that, Judge? I'm sorry. Are you saying that the agency didn't have the authority to tell him to observe certain procedures, like calling a particular individual at a particular time? I am saying that, Judge. That is one of the arguments made, that under Title V, there was no mandate or provision that he had to come in because of his level of professionalism, I presume, and status in the agency. So they didn't even have the authority for Ms. Fogerty to instruct him to go and talk to Mr. McDougal about requested time off. In addition to that, the director, Mr. Woods, when he's addressing the Douglas factors, he does say, oh, he has a good work history, he's skilled, but at the same time... But how would... I'm a little confused about your answer, Judge Crose, because how then would the agency know when they are and are not going to have their employees present if they don't have the right in certain circumstances to ask people who have a history in particular of coming and going without letting the right people know about it? I mean, clearly there's a government interest in having somebody there, right? I mean, this is a job. It needs to be done, and it's a very important job. And so clearly there's an interest in having someone there. So are we really saying that the agency doesn't have a right to say you have to let us know when you're not going to be there? What I'm saying, Your Honor, is that under Title V, there's procedures laid out regarding these particular set of employees and professionals and their set of memorandum which deals with a totally separate set of employees. And procedurally, by them not adhering to Title V on adverse actions against Mr. Barlow, that that was error. And because that was error, they had no right to mandate that he speak to a particular person unless they change the characterization of his title, make him a different type of employee, take him out of the Title 38, which would be governed by Title V. And that was not done. And that's just a procedural aspect of it, Judge. And I know... I guess I'm still having trouble, though, understanding it, and I very much want to. I understand. So I thought before I understood you to argue that his boss or supervisor could not require him to let them know when he was going to be absent. Let me clear that up. I may have misspoke. Of course, we know that you have a supervisor and employee-supervisor relationship. Of course, a supervisor can direct an employee to give them instruction about their time off. And if I may clarify, the argument is that even with that mandate from the supervisor, the adverse action that they took should have been governed by Title V. And how would that have been different then? How would your result have been different if it had been governed by Title V? Does Title V say, for example, you can't fire for this type of indiscretion? Or what would have happened differently if it had been properly following the procedure of Title V? Judge, when I looked at Title V, it just says that these adverse actions will be decided by the Secretary of Department of Affairs. It did not lay out, and I did not find anything that would say specifically what that adverse action would be in a case like this, and I apologize. So at this point, I have to admit, and I concede to this Court, it would be speculative at best on what that outcome would be. As regarding the Douglas factors, as you mentioned earlier, Judge, the director admitted that he did not even take into consideration a lesser penalty, that he did not use any mitigating circumstances in making his decision, but did say he did a thorough analysis under the Douglas factors. I mean, those things should have been considered. For example, my client was on antidepressant medication. We don't know if even arguendo, if that AWOL did occur, and we know that's the government's argument, that that could have been based on him being medicated and not able to come to work, or medicated and not able to call in. Again, I'm just speaking out on hypotheticals, but I think that under the Douglas factors, those things should have been taken into consideration, especially a lesser penalty versus just straight-out removal. Let's save some of your time, Ms. Gianantonio, if that's convenient for you, and let's hear from the other side. Thank you, Judge. May it please the Court. We respectfully ask this Court to affirm the decision of the Merit Systems Protection Board upholding the removal of Petitioner Blake Barlow from his employment at the Department of Veterans Affairs. The Board's decision both as to the fact of Mr. Barlow's absence without leave and as to the reasonableness of removal as a penalty were both supported by substantial evidence. Furthermore, with respect to the charge concerning the absence without leave, it seems there is some confusion with respect to what Petitioner Barlow's argument is on that. The argument to the Board appeared to be that he was not covered by the leave policy. It seems there is a somewhat new argument that the procedures followed by the agency in disciplining him also were inappropriate because they did not follow the other standard that would apply. But as counsel has conceded, she's not certain what procedure should have applied. But you agree, do you not, that in the notice it cited the center memorandum? It did. You're saying that that memorandum by itself is not applicable? Correct. However, the charge itself was absence without leave, and he was absent without leave because he was required to call in and request and obtain approval for his leave from his supervisor. And Mr. Barlow concedes that he never contacted the supervisor, nor did he obtain approval from the supervisor for the leave. Well, I think there was a dispute. It's just the contrary testimony wasn't credited, right? No, he alleges that he contacted the supervisor's assistant. He does not allege that he contacted the supervisor, nor does he allege that the assistant told him the supervisor had approved the leave. And so for that reason, he never sought the approval from the supervisor, nor did he obtain the approval from the supervisor, which is all that was required for the absence without leave since the absence itself is not contested. Although it appears that Mr. Barlow seems to be challenging the testimony about who called when, those credibility determinations, as Your Honor has already stated, are virtually unreviewable by this court. No, this seems like an incredibly harsh penalty and almost a bit of a witch hunt. I mean, I don't know. What happened here? Was this agency just out to get him? I mean, what really justified firing a guy who's got 20 years on the job, who's himself a disabled veteran and who there's absolutely no comment or question or assertion that he wasn't doing his job anything but very, very, very well? Because he stayed home sick one day? Come on. That's quite severe. We would, of course, object to the characterization of it being a witch hunt. There's actually no evidence in the record that anyone was out to get Mr. Barlow. The fact, actually, that the table of penalties, which Mr. Barlow himself refers to, permits removal on the third offense of absence without leave, we believe is a very strong evidence of the fact that this is not an extreme penalty at all. An agency to do its work must have its employees on hand. And if employees are not going to be on hand, the employees must state to somebody that they're on hand so the agency can make appropriate other arrangements. Although there's an argument that Mr. Barlow makes concerning the nexus and the agency didn't show that removal would promote the efficiency of the service, it seems this is one of the strongest cases for the efficiency of the service. It's not a question of how he did his job or a couple of mistakes on his job. He was not at his job. If I could just insert myself here, I mean, I guess what's troubling to me, and I agree, I mean, three strikes, you're out, three instances of AWOL, but there is AWOL and there is AWOL. We've had cases of AWOL here where someone was AWOL with no leave for 30 days or for a year or for at least several days. And I guess what seems thin to me is notwithstanding that you get to count one, two, three, as I understand it, so correct me if I'm wrong, the first AWOL, which was the one leftover piece that you got sustained on when you tried to remove him, was just because he left for the airport, he was taking a work-related trip, and he left for the airport a couple hours before you thought he should have left for the airport. And the second AWOL charge, as I understand it, was that he did call in, but he just spoke to the wrong person. So this isn't an instance where, of course, the government has the right to be able to expect that people will be at their desk every day, but these don't seem to me to be the traditional kind of charges of AWOL which are necessary in order to keep the government right. I assume you disagree with what I've said. Yes, and that may be the case, but clearly this court's jurisdiction is limited with respect to the weighing of the Douglas factors. It may be that someone else would weigh the Douglas factors differently, but it's clear the board found that the agency did appropriately consider all of the Douglas factors. The other factors which weigh against the factors that you've mentioned are, for instance, the fact that Mr. Bartlow was a supervisor. His counsel seems to indicate that he had quite a prominent role in the agency, and so therefore it is appropriate for the agency to consider the fact that a supervisor with a prominent role who does not show up at work and does not call in, does not follow the procedures specifically explained to him, that weighs in favor of the removal. Was he still a supervisor because the background here, which the other counsel referred to, was that after he came back, when the removal was reversed, he was placed in another position which was not the position that he had been encumbering for most of his career. So was that also a supervisory position? It's not clear from the record whether he was actually supervising employees at his new role, but he appeared to still have the same sort of status of a supervisor. What is that role? I thought the gravamen of being a supervisor and having that count on the penalties is that you have to set a good example for the persons that you supervise. So it matters, doesn't it, whether or not he supervised anyone? Well, the other issue is the fact that he had a prominent role. I think supervisor both refers to, and used within the government, both to refer to whether you actually supervise employees and also your status within the agency, the types of responsibilities that you have, both fiscally and otherwise. And it appears from the record that he still had that role, even though he might not have, during the course of his detail, had specific employees that were reporting to him. So what's your comment is, well, the day before the third instance of AWOL, he would have been given a 45-day suspension, and as your opponent has argued, to go from a 45-day suspension, which in itself is a significant penalty, to removal, because of one day, the third, and apparently of three, not as grievous issues of AWOL as what we've seen. The discrepancy between a fairly serious punishment and removal from services is quite significant, is it not, for one day of AWOL? It appears significant, but there is no requirement that there is some sort of, in going from first offense to second offense to third offense, that there is some time limitation on what, if you've only suspended for 45 days and you can't go to removal from that. One of the major factors that's considered. No, but severity is one of the factors, isn't it? The severity, right? AWOL for 30 days is a far cry different from AWOL for an hour. Yes. So the severity certainly is a factor, contrary to sort of what you're kind of implying right now. No, I'm sorry. I was trying to speak to the issue of I thought that Your Honor was asking a question about is it appropriate to go from 45 days to removal as opposed to 45 days to 180 days. The question of the severity, the history of this employee's relationship and being up and down through the board and so on are all factors, perhaps, in trying to take an objective look at what to make out of what has the look of some, if not irrational, extremely severe penalty for a longstanding employee whose record is full of superlatives for his performance. Right. And this court's jurisdiction, obviously, is limited to considering whether or not the board properly determined that the agency considered the factors. And all the factors that you mentioned weren't. Our jurisdiction is not limited to deciding whether they considered the factors. We then decide whether the penalty is an abuse of discretion, don't we? Yes. Oh, okay, because that's two very different things. If all we can say is, oh, yeah, they considered the factors, then there's nothing really more for us to do because I don't think anybody disagrees that they did. I think the real disagreement lies with whether or not this penalty is an abuse of discretion in light of those factors. Correct. So we do get to reweigh them. We just don't get to reweigh them de novo. We have to reweigh them with the deferential eye of the abuse of discretion standard. Exactly. And one of the other factors that was considered was the fact that he was clearly on notice of the requirement and whether or not the rehabilitation was likely. Given the prior instances, given his role, given the clarity of the notice that had been given to him with respect to the AWOL requirements, the agency made the determination that rehabilitation was not likely, and that is one of the factors that was considered. Did the board make a finding or something that rehabilitation was not likely? You're saying that was one of the factors. That was the board made a finding that the agency considered that factor. Okay. So if there's nothing further, I would just submit that we respectfully ask for this court to affirm the decision of the board concerning Mr. Borlo's removal. Thank you. Thank you, Mr. Monson. Ms. D'Antonio? Thank you, Your Honor. I want to address the court's characterization of a witch hunt, and we're here to represent on behalf of Mr. Borlo. It was. Ms. Kathleen Fogarty, the record will show, she stated she was not pleased when he returned back to work. She felt like the court had made a poor decision. Also, Mr. Woods, the director, stated that even though he made the final decision, he relied on the recommendation of Ms. Kathleen Fogarty. You're going to ask me a question? I was just going to say, you have such little time. You might want to tell us about the reasonableness of the penalty  And, yes, we would argue that it is an abuse of discretion because it is too severe under circumstances. Twenty-plus years with the Department of Veterans Affairs, and even if we argue that there were three AWOLs, that is not reasonable under circumstances based on Mr. Borlo's skills and what he had to contribute to the Department of Veterans Affairs, which he had already done. This court, as Your Honor has stated, does have the authority to address whether the penalty was an abuse of discretion and whether the lower court abused its discretion when stating that the lower court had adequately addressed those issues. And we would ask this court to find that the lower court did abuse its discretion and reverse that ruling. Thank you. Thank you both. The case is taken under submission. All rise. The Honorable Court is now adjourned day today.